Next case is Tinnus Enterprises and Guru v. Telebrands, et al., 2017-11-17. May it please the Court. I'd like to start by talking about the 749 non-infringement issues. The first one is we believe that the Court has erred in its claim construction with respect to common face. We urge a planarity requirement with respect to common face. The extending through a common face of the housing at a second end. In a couple of minutes I'm going to talk about the second end limitation. The examiner in the prosecution of the parent patent 066 interpreted this limitation as distinguishing the prior art Boise reference and specifically figures four and five. Boise delivers water through a large cylindrical tube to different spigots for the filling of multiple balloons at the same time, very similar to the invention here in this case. The applicant initially attempted to amend the limitation to get over Boise by adding that the holes have to be in a two-dimensional array. This was unsatisfactory to the examiner. And the examiner found that it was necessary in an examiner's amendment to add the term common face to distinguish the present invention from Boise. So the question is, why did the applicant and the examiner add the common language, common face language, to the claim? Why does Boise's cylindrical housing have holes in a second end, which is what the examiner said, but not holes in the common face of a second end? And the answer is that the... Boise has all these spigots pointing in all kinds of different directions, right? This way, that way, and the other. And obviously the district court here concluded common face means, all right, now we've got all the tubes aligned in the same direction, and so we don't have, I don't know what you want to call it, Janus-faced spigots running around in 14 different directions. Yes. A couple thoughts, Your Honor. One is, I think I would disagree with the characterization of Boise. Boise has spigots facing in exactly three directions. It has four facing in one direction, it has four facing in another, and it has one in the end cap, which is facing in a third direction. It undoubtedly has multiple openings that are facing in the same direction. There's no requirement in the claim that all of the openings face in the same direction. There is a requirement that there be a multiple of openings that are in the common face of a second end, and Boise would absolutely meet that. This is a preliminary injunction, right? Yes, Your Honor. Correct me if I'm wrong, there's a lot of stuff here, but the parent patent with the same spec, there was a preliminary injunction granted. We affirmed, and then on these two patents, you've gone to trial in Texas, and a jury has found validity and infringement, and why shouldn't we just let things proceed, let the trial proceed? You've got a patent office proceeding where you've got an invalidity holding on indefiniteness, and that's somewhere coming up here, so why shouldn't we just affirm and let these proceedings move on? Okay, I think there are several questions in that, I'll try to address them all. If I miss one, please remind me. With respect to the affirmance in the 066 case, that was done under a plain error standard based on the fact that the objections were not properly preserved below. With respect to why don't we just let things play out in the district court, that will presumably take months to play out. Is there a permanent injunction requested? There is. Okay, and so you're telling me the timing on when the permanent injunction will be ordered or denied, we're still months away from that? Well, we don't have oral argument in the case, Your Honor, on those issues until March 13, and so there presumably would be a ruling, I mean I can't predict, I would assume sometime in April or May. All right, so you're saying no permanent injunction order could possibly be issued before March 13. I'm not saying possibly, Your Honor, I'm saying that the fact that the court has ordered oral argument on that for March 13 would suggest to me as counsel that we probably would not be looking at that issue until April, but I cannot promise that, Your Honor. It's also, I believe, critical A permanent injunction order would move this appeal, wouldn't it? I believe it would, Your Honor. At least as I would understand the terminology, and maybe it's the same thing, I believe that the preliminary injunction would merge into the permanent injunction. I believe that it's critical that the district court receive guidance in the form of a ruling on this preliminary injunction appeal with respect to claim construction. It's critical to the case. I believe the explanation for how the court's construction of common face can be squared with what the Patent Office did in Boise, and I certainly cannot figure it out. The Patent Office unambiguously stated that Boise does not have multiple openings in a common face is understood, as the district court defined it, as a shared outer surface of the housing through which a plurality of holes extend. It is beyond doubt that Boise has multiple openings in the common face of a second end. And so the scope of an injunction, whether it's preliminary or permanent, is going to be critical as we go forward. Telebrands has attempted, in its view, to compete fairly. It's come out with three different products in an attempt to avoid patents. The district court has actually held in a contempt proceeding that the Battle Balloons product that is at issue here was indeed an attempt to avoid the patents. The court denied the contempt. And if we accept the claim construction argument that, indeed, a common face has to be planar, there can be no infringement with respect to the 749 patent. Even if we accept the district court's construction, and again, I believe that's irreconcilable with prosecution history, there still is no infringement. And that's because, even under the district court's construction, there have to be multiple holes in a shared outer surface. Key word, surface. What is a surface? To determine what a surface is, you have to look at the geometric boundaries. Otherwise, you can't determine what the surface is. It is undeniable that in the accused product, there is a spiral staircase, and each of the spiral staircases has exactly one surface. It's the court's construction, Your Honor, and I'm, quite frankly, I have no idea where it comes from. And so, therefore, the court has said there's got to be a shared surface that has multiple holes. So, we believe we win, whether it's under our construction, which we think is the correct one, or under the court's construction. Let me briefly talk about second end. With respect to second end, the court also disagreed with the patent office. The patent office had found that there were multiple holes in the second end were not in a common face. That's why it distinguished. But it did find that there were multiple holes in the second end of Boise. And what it found was that all nine of the holes you identified, four on one side, four on the other, one at the end, were the multiple holes in the second end. So, it found the second end to be everything other than the first end, which was the end cap where the water comes into the tube. In contrast, the court said that it, when it looked at figures four and five of Boise, it found that there were an aligned plurality of holes along the cylindrical portion of the housing, and a single hole at either end of the housing. And it went on to distinguish that from the claim, and this is at Appendix 2495, stating, importantly, the plain language of the claim requires that the common face be at a second end of the housing. Boise does not disclose a shared outer surface with a plurality of holes at a second end. Well, again, we think that interpretation is inconsistent with the prosecution history. But if the court is correct that for second end, you have to look at the limit, or what do you want to call it, the linear limit, or the outer limit, or whatever it is, then we would not infringe for a second reason, which is the second end. In other words, our second end, our furthest most surface from the first end, is a plateau, you can see it clearly, I think, in the drawings, that has no holes whatsoever. So it's somewhat frustrating, Your Honor, when the court is, you know, interpreting the claim, it's inconsistent with the prosecution history. But if the court is correct, well, then we should win under the court's rationale that the second end is the farthest area away from the first end. In this regard, the court has gone back and forth on claim construction. Its original claim construction in the first case for second end was an outer limit of the housing distinct from the first end. It then said, rather than looking at the outer limit of the housing distinct from the first end, which I think, by the way, would have meant we didn't infringe, because if you're talking about the outer limit, it would be the top, the court then changed it to second end as an outer surface. Of the housing that's distinct from the first end. You want to save some rebuttal time? You're well into it? I would like to make one comment about obviousness, and then I will sit down. And I do understand I'm running up on my time, and thank you for your warning. With respect to obviousness, this is the unusual case where we're really talking about a very straightforward mechanical invention. Saggio pretty much does it all. It's a device for filling multiple balloons. It's missing one thing. It's missing the elastic ring. Well, fortunately, the elastic ring is in Donaldson. Donaldson unambiguously teaches you have an elastic ring, it clamps, and it seals upon detachment. It is not a big deal to say if it works for one balloon, and I want to fill multiple balloons, I'm going to take the elastic ring, the O-ring, out of Donaldson, and I'm going to use it with Saggio. So this would appear to be the quintessential invention where, yes, it's cool, and yes, people have a lot of fun with it, but at the end of the day, it's just not novel and not obvious. Thank you. We will save you a little time, Mr. Underhill. Mr. Donaldson. Morning, Your Honors. May it please the Court, Your Honors. I'll jump right in to this. There's a short path to a solution here in that Telebrands has not contested infringement of the 282 patent. So as long as this Court finds that the 282 patent is not obvious, then there's nothing for this Court to do. And as this Court suggested, we spent six days in East Texas together in a courtroom where a jury decided that the patents were both infringed, neither of them were obvious, they're both valid, and that all of the conduct of Telebrands is willful. So absent anything new, and I would suggest to this Court that there's nothing new in the argument about common face or second end in Tinnis II than there was in Tinnis I with respect to either obviousness or, frankly, infringement. Telebrands has imposed a planarity requirement on common face, and in our view, when we talk about face, we're talking about my face or the face of a mountain or the north face of Mount Everest. We're not necessarily talking about something that's flat. When we talk about the direction that something faces, and we have Boise with things going, I think as Judge Chen said, in all directions, we're talking about a common facing direction. So in our view, we think the Court did a good job, and the reason why the Court... Well, there seems to be a construction of the construction that was earlier provided, shared outer surface, outer limit of the end as being the second end, and so there's arguably some kind of patchwork going on here that we have to step through and understand. And so how could these geometric steps on the distal portion of their product be considered a shared outer surface? Well, because it's not just a question of shared outer surface. It's a common face of the housing, a shared outer surface of the common face of the housing, and all of these holes, so you have first end, you have second end. Water goes in one end. Water comes out the other end, and on one end, you've got holes. We're talking about the construction that the District Court abandoned, the shared outer surface language. And so now there has to be some kind of interpretation of the interpretation, shared outer surface. What do you think the Court understands that phrase to mean? Well, at the time of this preliminary injunction, Your Honor, there was no claim construction as of yet. So from what I recollect, the claim construction that the Court used was essentially it decided what the plaintiffs, what we proposed at the time. So, and it did rely in some part on the original claim construction from Tennis I, but specifically in this case, there hadn't been one yet. What the Court did is it did in fact change its claim construction from Tennis I to Tennis II, and part of that was because Telebran's expert said it didn't understand what the Court meant. So the Court clarified its claim construction of the shared outer surface of the housing, and I will say over and over again, it came up at trial, too, with our expert and with their expert, and their questioning was, well, what do you mean? We're going to talk about super technical, very specific definitions of shared outer surface, but it's, or common face. We're just going to talk about common face. But what really is at issue here is the entire language of the claim. It's the common face of the housing, and that's, I mean, I don't think the Court made any error there, and I think it's well within the Court's discretion to make that. In fact, I think this Court found, in fact, that last time in Tennis I that a very similar construction, almost the exact same construction, was appropriate and well within the Court's discretion. I believe also, I know Mr. Underhill said it was a plain error standard, but reading the opinion, it looks like the Court out of the gate said, we're reviewing this on an abuse of discretion standard, and didn't find that the Court had abuse of discretion at that time. So I guess, Your Honors, I'll just, I'll say I know this is Mr. Underhill's appeal and Telebran's appeal, so I'm not going to dive through a bunch of extra hoops here and burn your time and take my whole 15 minutes. I will say that we feel that the District Court did a good job. There was a lot of evidence, a lot of testimony, a lot of time was put into this by the Court, and this is kind of a serial infringement case. We have another matter with you right after this for the third iteration of the same product, and we think the District Court was right in what it found, and we just ask that this Court confirm the District Court's findings and award us our costs. Thank you, Mr. Dunlop. No one loses points by not using up all their time. Thank you, Your Honor. Mr. Underhill's got a minute.  Thank you, Your Honor. The first is that we, again, did not hear any attempt to reconcile the Court's claim constructions with the prosecution history and the handling of Boise. Could you speak to the 282 patent issue that your opponent counsel initially raised? Certainly. We do not make a non-infringement argument with respect to 282 here. Right. So if the validity, you know, conclusion, preliminary conclusion by the District Court we find is there's no abuse of discretion there, then we affirm the preliminary injunction. Your Honor, it would still be extremely important for the Court to reach the 749 non-infringement for the following reason. The scope of the injunction is extremely important to Telebrands. As I said and as counsel said, Telebrands has come out with three products in an attempt to avoid the patents, and it needs to know where the line is. And the line is different on whether it infringes the 749 or the 282 or both patents. In addition, there are pending motions in the District Court, for example, a sanctions motion that our non-infringement position with respect to 749 is so frivolous and our urged claim construction so bad that we should be sanctioned and this is an extraordinary case. That's an awfully strange argument in light of the fact that no one, the District Court or opposing counsel, can begin to articulate how the Court's claim construction can be squared with what the prosecution history did in Boise. There are strong reasons to go further, but in terms of whether it could be affirmed just based on concluding that the District Court got it right on validity, then that would be enough to affirm the preliminary injunction order here. Your Honor, I don't believe it would because I believe that the scope of the injunction is also at issue. And the scope of the injunction would be different if the Court were to affirm only on the 282 or if it were to affirm with respect to the 282 and the 749. Could you explain that in your blue or gray brief? The scope of the injunction order would be different if we only looked at... Your Honor, at this point I don't know if we did. There are different limitations, though. The 282 is narrower in the sense that it has a pressing limitation that the 749 patent does not have. And so, therefore, and it also avoids the common face and the secondary end. So in that sense, it's broader. But, you know, Telebrands not only needs to know should there be a preliminary injunction, and obviously we think there should not, but we also need to know what the scope of that preliminary injunction is. If you have your point, Mr. Underhill, we should conclude the argument on the first case. We'll take it under advisement, and perhaps you sit down for a second and get ready for your second argument. Thank you so much. I'm going to change out my papers, if that's okay, Your Honor.